Good morning and good day to the court. My name is David Fleming. I'm an attorney for Kenny Morsea. And if I might reserve two minutes for a brief comment. I believe the important aspects of this case is to make sure that the court holds both ALJs and the commissioner accountable. For following their own regulations and rulings. I've got to admit, when I'm reviewing cases, I'm looking for more medical evidence than an excuse typically when I decide to take a case. This is admittedly, there's a lot of caps and pulls and treatment records. Frankly, I think my client is a person who does not go to the doctor unless it's absolutely necessary. As evidenced by the diagnosis of stage 4 cancer, despite coughing up blood and passing out for a couple of months before he even sees treatment. So, that is my read of the evidence and why there's caps in it. But, I could not get past the fact that this is a stem cell trial. We have a minimum threshold here to meet. In other words, the minimum screening for groundless claims. The commissioner's own ruling to talk about the minimal effects test in step 2. We have a date last observed back in March of 11th. But, he has a sort of entire time period between his last onset date and the date last observed. Can you suggest, I actually don't have a visual of what I'm entering into being on oxygen. I don't know if the interviewer has the ability to actually form normal work activities. Is it, in a way, the oxygen he's not capable of lifting or walking or he's going to say anything? Or, is it just like the commercials? I think there's both aspects to it. The vocational expert said, look, if you're basically having a lot of oxygen taken around you all day and counts, that's an accommodation for a disability which, as we addressed in the briefing, accommodations are not accounted for in a sense of whether a person can work. I mean, these are step 5. So, is it, just give me a visual of what it is. Is it like a big thing that you have to wheel around? Well, I don't know. I wasn't there at the time, obviously. But, I have seen oxygen tanks being wheeled and you have a mask. And, Dr. Mulligan verified in a letter he was to be on oxygen at all times. This isn't just periodic, boy, I'm out of breath. Let's take a couple. So, it's cool if I can interject here. I don't have a preface. Assuming that we were to conclude that the LG inherited step 2 and should not have screened this case out by saying it's not severe, procedurally what happens then should simply also address before we, in that case, what we also addressed before remanding the credibility finding, the medical expertise, or do we just send it back and vote that plan? Well, that's exactly right. That's the next step I was getting to admire in the letter. I don't think a lay person, according to Wikipedia, none of us are here are doctors. Okay. Exactly, medical doctors. I wanted to make sure I was right before I stated that moral argument that no one has MD in their name, by the way. But, it is really not up to us to assess when cancer progresses to stage 4 how quickly it might be the effects of COPD and the cirrhosis on his stamina ability to work. That is exactly why, you know, we have these cases with Armstrong and Oregon and Laramie and Social Security's old ruling, 8320, fits this to a T. Okay. It seems that you have not yet answered each of those questions. Well, let's say I was thinking, you're talking from Rome, I was thinking that if we were to rule for you on this first issue, that that would take care of it if you go back and repeat it. Are you saying that you still have more work to do? Well, I would ask for a remit with direction to retain the medical expert to assess the onset date of this disability, because it's clearly it's got to be inferred by a medical expert. No one knows precisely what the impacts of all these impairments, and I'm not necessarily only talking about step 3, as you would be meeting the cancer list. The cancer list was only for the cancer of the sponsor you're supposed to be. Right. And I probably could have been clear in my briefing, the experts are not only retained for a step 3, but they can be asked, okay, what threshold of adhesives should be expected for the RFC assessment, which then would apply to step 4, step 5. I thought you only asked for the appointment of the medical expert to figure out the onset date, but I thought with respect to disability for the cancer group, right? No. When we talk about meeting more equally, equally means you take everything into the impact. Would the impact of the COPD and cirrhosis limit functioning day-to-day in addition to the cancer? And it's not, again, just for the 13.02 assessment, but I, over my years, have asked many of my medical experts at a hearing, well, okay, if he doesn't meet at least a step 3, what functioning limitations would be expected based on his background and testimony, and would his testimony be well-supported? Again, that would go to judge Will's questioning. The medical expert not only looks at the medical evidence, but they're supposed to at least be at the hearing for hearing, and they can even ask questions about, well, did you have this to pass it? And then we say, medical expert, what function limitations would you expect for what this record supports, not only on the record, but testimony? And, therefore, we can assess an RFC meeting and get to that point. And that's why I think it's important, and following the commissioner's own direction and SSRE, he's the one who says, yeah, medical expert. How does the credibility finding translate to the intervening medical? Yeah. Well, my assessment was the credibility finding was rather cursory. He said, well, he claimed he got worse, and the record doesn't support that. That is not what he claimed. He actually said that oxygen for nearly 13 months helped him. He was able to go home. He was on an opiate. It took him an hour rather than the normal 20 minutes, and he had to take several breaks. But he said it did help him, and then the county acted because of funding, or they didn't approve it anymore. So he did not say, I have worse symptoms. He actually, the COPD was getting better because of the oxygen. So I don't think the judge mischaracterized his testimony in the credibility finding. The other finding was, you know, mental and thoracic treatment, there's no doubt about that. But if there's reasonable explanation, and he's from a remote area, he did not have insurance with it either, and he's just not the type that runs to the doctor every time. So, yes, is that a very convincing reason to throw out all of his testimony or do we have all of these symptoms in documented medical treatment for a COPD, the cirrhosis? He almost expired, according to his doctor, prior to the DOS chart. That has to be severe impairment. And we're talking about credibility also, in my mind, within the personal step two finding. I mean, he's not even critical of step two for the mental and thoracic test. I think this credibility finding has errors, and upon a new hearing, you know, we'd have a full opportunity to develop the testimony and make it an impressive credibility finding, but I don't know how to do the pages. Thank you. We have some time for one more. Let's hear from the other one. Good morning, Your Honor. Sheevan Dandekar from the Commission on Social Security. I'm glad to counsel and withdraw more than a number of certain positions, but we did have multiple positions in this case, analyzed this record, and come to the conclusion that, although Dandekar was disabled in 2013 because of the treatment, the kind of toxicity of the treatment, the chemotherapy, and the radiation, we disabled him according to our listings, that he did not have a disability going back to the future period. So, we did have two experts look at this record, and they looked at the record in the middle of 2013, so all of a sudden that's a credit in the record before the AMJ. I don't know if I can interject. I'm going to get you out of the screen reader argument, but I really am having trouble dealing with the standard we have in step two that will always demand us to screen out phony claims with saying that someone who has to look and actually think around with doesn't have a severe impairment, which seems more rational if the ALJ had viewed that as a severe impairment and then proceeded to assess the person's RFC and whether they could do their best work or some other work, but did not even analyze it. It seems to me very strange. I'm going to disagree that the ALJ did not analyze the oxygen tank that was analyzed in the decision. The ALJ acknowledged that the claimant had a certain oxygen source provided by the county, but the ALJ found that there was no... Also, I didn't see that the ALJ didn't even mention the oxygen tank, but did the ALJ just craft an RFC? Well, no, because the ALJ found that the claimant did not have, and this is consistent with what the state agency doctors had concluded with the outdoors institution evidence, showing that there was a severe impairment dating back to the insurance period. And so when the ALJ was talking, it acknowledged the state agency doctor's opinions, also talked about the allegations regarding using oxygen and found that it was essentially not medically necessary, based on this record of the claimant's test phobia, because the claimant had testified that he was actually functional without the oxygen. I would also point out that there is nothing within the contemporaneous treatment records, and this is from Dr. Mulligan at Troubled Gay Health and Gay Health. When the claimant did go in and seek some sporadic treatment, it was never noted that he had a prescription or a medical need for oxygen. And so I think it's very important, because although the claimant, when he was discharged from the emergency room, was instructed to use the oxygen, I do not believe that that was a prescription that was supposed to be ongoing forever without explanation. So when the claimant went in to his primary provider, Dr. Mulligan, within the list of current medications, and also the way the trademarker described it in some supplies as well, this is from the administrative record 360E, it says active outpatient medications, including supplies, medical supplies. There's no mention of oxygen in that list. There's a list of 12 or 13 different medications. There is no mention that he had oxygen. It's pretty clear, isn't it, that the DOJ, the Department of Health and Human Services, is describing that these representations have been filed, and Dr. Mulligan's recommendation shows that the DOJ may be concerned about finding a preferred substance, and it's just part of that. I mean, couldn't they directly or otherwise, I don't know, that Dr. Mulligan was officially going to go through and find a way to help the DOJ in this record? I do, and I think the ALJ, if the ALJ is talking about credibility and particularly if we're focusing on the oxygen, it's on page 19 of the administrative record. So the ALJ is talking about, again, acknowledging that there's oxygen services provided, and specifically points out that the claimant had made some exaggerated allegations about once the oxygen was removed, he did not get dizzy, couldn't breathe, passed out, and fell flat on his head. And so the ALJ specifically discounted that portion of the claimant's testimony, saying that there's no objective evidence from the doctor verifying that information. He never complained about that to anyone. He never requested that the oxygen services be restarted once it was taken away, and he never asked for a doctor to continue the services. He didn't ask for it to be restarted. I'm sorry? He didn't ask for it to be restarted once it was taken away, because he could not afford to pay for it, and the agency that was paying for it said, we're not going to take it anymore, so we'll remove it. I don't see any allegations in this record that the claimant was unable to afford treatment. There's never been an allegation. He's seeking this business because he's got, like, That's a different question. I think he's a surgeon, so you know he did not favor the department that purchased this. Your Honor, I'm going to disagree. There's a question between disability benefits and having insurance for means to obtain treatment, and there's been no allegation that the claimant was unable to obtain treatment, except for the one allegation that I can find in the record, was in the end of 2012, there was a question about whether he could get a referral to a specialist, and that was the only time he was called to county medical services. He was speaking out, and there's no allegation that he paid to be able to, if he could not afford it. The physician said it costs per month to have a, you know, 24-hour oxygen. I don't know, Your Honor, but that's. There's no idea whether he is able to afford it, because you're not in a financial situation. You're not in a position to tell us that he. And there's no ask for. The continuation that you'd say he was able to afford it, he just didn't want it, right? There's no evidence for it, but the case alleges that he couldn't afford it. That's not part of it. That would be us making grand speculations about his ability to afford treatment, which has not been an allegation in this case. That's not all the problem I have here. I know you said things that the record shows, but it appears to me that the judge in general has to speak about how he was using the oxygen table when he started his appointment. He did not have a big comment to make at any of it. With Dean talking with him, his subjective findings, he was in no acute distress every time he showed up to see Dr. Mulligan. His longitudes were clear. He said that medication actually helped his COPD,   and he was able to afford it. This is not just a picture of someone who was actually using an oxygen tank to the extent that he alleged or that he required it. And when Dr. Mulligan issued two letters in 2013 and again in 2014, Dr. Mulligan mentioned that he had any limitations for any of his impairments except in the current present tense. So when the plaintiff's attorney was talking to him the day of the hearing, our theory of our case is that the claimant's impairments and disabilities reach back into the interim period, and the ALGS said do you have any medical opinions to support that? And he said, well, we have a viewpoint from Dr. Mulligan, which talks about disability in the present tense, and the agency agrees that the claimant became disabled from cancer in 2013. But the claimant, including the doctor, was not willing to offer an appropriate perspective, being able to say that the claimant had any limitations that would impact what we would consider to be basic work activities. And this is absent. I see. This is a question for both of those two. One, if we disagree with you on this first issue, do you agree with your opponent that we should introduce the study that they're introducing? If you find that the ALGS should have found a severe impairment dating back at least up to then, I would say at that point, then you would bring it back for an evaluation, because that would make the difference in the legal case. Don't we still need to resolve at least the medical expert? Was that an issue? I don't believe this case requires a medical expert. The only thing you need in a medical expert is a kidney for an onset date. And I don't think you need to for an onset date. I was asking you if we have to decide that, not to make an argument on the merits of it. But if we say the step two decision was incorrect, should we decide the medical expert issue one way or the other? I don't think you have to. I think you can send this back to ALJ for, if you conclude that there was an affirmed failure, it would be back to ALJ for an assessment. But I would point out that we already had two expert positions looking at this record. I would conclude that there was two based findings that were determined during that time. So we already have evidence in the record. To have another opinion to look at this, which is the expert positions at this point. I don't want to beat that horse. I know the government is committed on its position. But if you have a person who's got a form of cancer in the larynx and has a problem with their liver, so they have liver cirrhosis, and they have a problem with their lungs of COPD, what would it do to our precedent about step two if we were to say in those circumstances there's not a severe impairment because you can identify it and tell the fingers? Well, I think the circuit to precedent also states that a mere diagnosis of an impairment is not indicative of the severity of the impairment. It has to be evidence of current limitations coming from that impairment that impact these work activities that precedent already exists. And here I would submit that although the claimant had cancer, it wasn't the diagnosis that disabled him. It was the fact that he was undergoing this rather costly treatment. And during the cancer period, as William said, to the throat issues, the only complaint that the claimant has is that his voice was hoarse, and that doesn't impact his work activities. Yet one instance where he was hospitalized for an acute buildup of fluid in his content of his liver, he was treated and released from that, and his condition was described as stable, and it actually improved thereafter. And, again, with the COPD, his examinations during the injury period were normal. There was an extra bit of lung tissue, normal lung structures, among the other presence of COPDs there, and his medication improved his lung function. That's the objective evidence that we have here. So although diagnoses exist, we still have to declare as responsible for coding out limitations for all of those impairments, and that's what's absent from this record. That's just my opinion. Thank you very much. Thank you. Thank you for your time. While addressing counsel's assertion that there's two experts that are already reviewed in case, that was at their early level of review, non-examining doctors, and the both, if you look at my access to the record, which being page 61 and 72, only are focusing on the cancer diagnosis. That means I think he's already been found disabled at that time for the SSI portion, but they said there's not evidence of cancer prior to the last assertion, therefore not severe. If you find a step two error, a step two finding is error, by necessity you have to discount their opinions on that basis, that their opinions were not supported either. That does lead then to the directives of SSR 8320, that fits this to a T, the commissioner adopted these on rulings, if we've already been found disabled and we have to go back and see how far back it goes, a medical expert is required under the Ninth Circuit in 8320, who is asking the court to hold the commissioner to follow her own rulings here. That's exactly what SSR 8320 is for this precise case. So I do, I would ask that a medical expert, preferably, perhaps I don't know, an oncologist, some type of person, because there is a warning agent diagnosed in September 2010, in retrospect, a stage four cancer by January 13, perhaps a medical expert could give some insight into that, along with additional information for the client and for testimony to assess was that an important factor prior to the last assert?  He was released from the hospital with directives to use oxytocin at all times. Upon that release, he did that for 13 months. Dr. Malkin verified that he could use it at all times. He did approve, but not enough. So he said that there's use up to impairment here. Thank you. Thank you very much. The case is starting in just a minute.
judges: Gould, Watford, Sands